## In re APPLICATION OF FLORIDA POWER CORPORATION.
### No. 6414-EU.

Railroad & Public Utilities Commission.
June 10, 1963.

Edgar H. Dunn, Jr., St. Petersburg, for the applicant.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILBUR C. KING each participated in the disposition of this matter.

BY THE COMMISSION.

On February 28, 1962, this commission entered its order no. 3324 in the above docket and, among other things, directed Florida Power Corporation to prepare and submit to the commission not later than twelve months from the date of said order, for its approval, an appropriate rate schedule, or schedules, classifying

large-use customers according to use-characteristics, rather than by type of business.

The basis for the foregoing directive was the statement in order no. 3324 by the commission as follows —

"We are impressed with the desirability of classifying customers according to use-characteristics, rather than by type of business. For example, there appears to be little or no justification for a large commercial customer with relatively favorable use-characteristics to be paying higher rates than a small industrial customer with relatively unfavorable use-characteristics, merely because one is a commercial type enterprise and the other is an industrial type business. It is more realistic, in our opinion, for the applicability of a rate schedule to depend generally upon the customer's demand on the system and KWH usage rather than the business classification of such customer. We realize that it is not practical to make such rate structure adjustments overnight and that it may be unfair to the utility to require an immediate change in this regard; however, it is our opinion that the utility can develop such a schedule and submit it to this commission for approval on or before March 1, 1963. This order will require that this be done."

Order no. 3324 contained some other discussion concerning the failure of the utility to achieve any substantial reduction in the total number of its rate schedules. In this connection, there was also a statement that the commission expected the utility to continue the process of simplification of its rate schedules and to demonstrate some real progress in that area within the ensuing twelve months. However, the *only* affirmative requirement in order no. 3324 concerning the utility's future rate schedule changes was the directive that large-use commercial customers be reclassified within twelve months according to use-characteristics, rather than by type of business.

Florida Power Corporation accepted order no. 3324 in its entirety without complaint and without any representations to the commission that the reclassification of such large-use customers, as directed, could not be accomplished or would be unreasonable.

On virtually the last day of the twelve-months' period Florida Power Corporation filed with the commission a document entitled "Response on Compliance with Order No. 3324, Docket No. 6414-EU" and requested the commission to make its findings and issue a final order in said docket on the various matters presented in said response.

In its response, and as a part thereof, Florida Power Corporation elected not to comply with that part of order no. 3324 requiring a reclassification of large-use commercial customers, but in

lieu thereof submitted a general-service rate schedule and requested the commission to not approve the same because it would adversely affect the utility's revenues. Disregarding the plain intendments of order no. 3324, the utility determined on its own initiative that all customers served from its distribution system, in either commercial or industrial activities, would properly be the customers to be served under the new rate schedule. Based upon such determination, and without obtaining the commission's consent to this patent deviation from the plain terms of order no. 3324, the utility proceeded to conduct exercises for the combining of rate schedules C-1 and I-1 into a new general-service rate schedule. The resulting rate schedule has been made a part of the utility's response with the request that it not be approved.

In the period that has followed the filing of said response, we have accorded the utility two separate opportunities to confer with the commission and its staff concerning the response and its various proposals. However, we have not been impressed with the arguments urged and positions taken by the utility in support of its request that no further changes in its rate schedules be required at this time. There does not appear to have been any attempt on the part of the utility to comply with the plain requirements of order no. 3324; on the contrary, the utility appears to have completely misinterpreted the commission's language and has come forward with a general service rate schedule, the disapproval of which the utility can urge because of its unreasonable reduction of revenues. That is exactly what the utility is now urging.

The utility's response appears to us to be somewhat contrary to certain statements contained in a prospectus issued by the same utility under date of October 31, 1962. On page 4 of said prospectus, after referring to the terms of said order no. 3324, the following statement appears —

"The company anticipates that further compliance with such order will not result in any material change in gross revenue."

We have given careful consideration to the utility's formal response to order no. 3324, and we cannot accept it as a satisfactory compliance with said order, but must, at this time, reject it in its entirety.

Nothing has transpired, however, to justify any change in our conclusions concerning the desirability of reclassifying large-use commercial customers as directed in order no. 3324. It is our opinion that such reclassification can be and should be accomplished. We are further of the opinion that the utility has had

ample time to construct and submit to this commission for its approval such a rate schedule as we directed in order no. 3324 concerning the utility's large-use, commercial customers; and that it would serve no useful purpose to give the utility further time to comply with the order in this regard. For that reason, this present order will require Florida Power Corporation to make effective not later than midnight, Sunday, July 1, 1963, a temporary rate for its large-use commercial customers, as hereinafter directed, pending the completion of an investigation and study by the commission's staff, and the establishment and promulgation by the commission by formal order of a permanent rate schedule for such customers.

Now, therefore, in consideration thereof, it is ordered that the formal "Response on Compliance with Order No. 3324, Docket No. 6414-EU," filed herein by Florida Power Corporation, be and the same is hereby rejected and stricken from the record in this docket.

It is further ordered that Florida Power Corporation make effective with all bills rendered after midnight, Sunday, July 1, 1963, a temporary rate for its large-use commercial customers, pending the further order of this commission, by appropriately applying its rate schedule I-1 amended to contain the following additional provision in its applicability clause —

"Also applicable to commercial customers for light and power purposes when the demand is 25 KW or more and all light and power requirements are taken from the utility."

It is further ordered that the commission's staff, under the supervision and direction of the commission's executive director, initiate and conduct a complete investigation and study of Florida Power Corporation's books and records, rate schedules, bill analyses, and other appropriate records and documents, for the purpose of obtaining sufficient data from which the commission can develop and promulgate a permanent rate schedule for the utility's large-use commercial customers which will fully meet the requirements of commission order no. 3324. In this connection, Florida Power Corporation is hereby directed and required to cooperate fully with the commission's staff in every reasonable manner and assist them in said investigation and study from time to time as requested by said executive director. When said studies have been completed and the commission has developed an appropriate rate schedule, as aforesaid, a copy of the same shall be served on Florida Power Corporation and an opportunity given said utility to register with the commission any reasonable objections thereto before the same is promulgated and made effective.